## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA L. WILLIAMS, | : | 1:13-cv-675 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| CHAD R. MOYER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM</u>

### May 13, 2015

Presently pending in this § 1983 First Amendment retaliation action is a Motion to Dismiss filed by remaining Defendants, Thomas L. Kearney III and York County, Pennsylvania. (Doc. 101). For the reasons articulated herein, the Court will grant the Motion.

## I.    BACKGROUND

On April 2, 2011, Officers Chad R. Moyer and Gregory T. Hadfield responded to a report of a domestic dispute at a residence in Springettsbury Township. (Doc. 106, ¶¶ 7-8). When they arrived at the home, the officers observed Plaintiff being restrained by a male on the kitchen floor. (*Id.* ¶ 9). Plaintiff was noticeably distraught, yelling profanities, and attempting to get up. (*Id.* ¶ 10). Officer Hadfield instructed the male to let go of Plaintiff. (*Id.* ¶ 11).

Thereafter, Officer Hadfield kneed Plaintiff in her right rib cage, causing her to fall to the ground and suffer a rib injury.  (*Id.* ¶¶ 12-13).  The officers then handcuffed Plaintiff behind her back.  (*Id.* ¶ 14).

At the time of her arrest, Plaintiff suffered from anxiety, depression, and bipolar disorder.  (*Id.* ¶ 16).   Plaintiff believes that it should have been clear to the officers that she was emotionally ill, as she was shouting that she wanted to die, asked the officers to shoot her, and stated that she would kill herself.  (*Id.* ¶ 15).

Due to her agitation and fear of Officer Hadfield who had just harmed her, Plaintiff did not cooperate when the officers attempted to place her in the back of the police cruiser.  (*Id.* ¶ 17).  Officer Hadfield responded by drive-stunning Plaintiff in the calf with a taser.  (*Id.*).  When Plaintiff kicked at the inside rear of the patrol car, the officers removed her and applied shackles.  (*Id.* ¶ 18).  Officer Hadfield then pushed Plaintiff into the back of the vehicle, punching her at least two times in the face and upper body and grabbing her by the neck.  (*Id.* ¶ 19).  Officer Moyer also entered the vehicle and punched and slapped Plaintiff at least twice in the head and upper body.  (*Id.* ¶ 20).  The patrol vehicle's video camera captured the officers' actions.  (*Id.* ¶ 19).

Following the arrest, the officers prepared and submitted false police incident reports to Springettsbury Township, in that the reports did not accurately

relate the force employed by the officers or Plaintiff's actions.  (*Id.* ¶¶ 22-23).

They filed or permitted to be filed a Criminal Complaint against Plaintiff, charging

her with two counts of aggravated assault, one count of resisting arrest, and one

count of disorderly conduct in connection with Plaintiff's conduct against the

officers.  (*Id.* ¶ 24).  The affidavit attached to the Criminal Complaint contained

false statements and omitted material facts.  (*Id.* ¶ 25).  Specifically, the affidavit

did not disclose any of the force employed by Officer Moyer and did not indicate

the extent of the force used by Officer Hadfield, and it falsely stated that Plaintiff

resisted arrest and assaulted the officers.  (*Id.* ¶¶ 26-27).  Officer Hadfield signed

the Criminal Complaint, verifying its veracity.  (*Id.* ¶ 28).[1]

On June 8, 2012, the criminal charges against Plaintiff were withdrawn, and

she pled guilty to a single count of simple assault, which charge related solely to

her conduct against the male actor who had been restraining her.  (*Id.* ¶¶ 29-30).

When the instant lawsuit was filed on March 14, 2013, Defendant Kearney

issued a public statement that, upon learning about the video footage showing the

circumstances of Plaintiff's arrest, he referred the matter to the Township for

investigation.  (*Id.* ¶ 35).  Defendant Kearney stated that he did not investigate the

---

[1]  Officers Moyer and Hadfield also issued Plaintiff a Non-traffic Citation for Harassment for conduct allegedly committed against the male who had been restraining her during the domestic dispute.  (*Id.* at p. 5 n.1).

matter further because he never received a referral back from the Township

requesting that he do so.  (*Id.*).  Later, Defendant Kearney publicly admitted that he

did not refer the matter to the Township as initially claimed.  (*Id.* ¶ 42).  Regardless

of whether the Township conducted an internal investigation, Plaintiff claims that

Defendant Kearney was obligated to conduct a criminal investigation into the

officers' actions and did not need a referral from the police department to initiate

one.  (*Id.* ¶¶ 37-41).  Plaintiff characterizes Defendant Kearney's failure to

investigate the incident as a "failure to properly perform the duties of his office"

and his statement regarding the Township's failure to refer the case back to him  as

a "failed attempt to cover up same."  (*Id.* ¶ 43).  She believes that her lawsuit

exposed this deficiency, causing Defendant Kearney to suffer embarrassment and

public ridicule.  (*Id.*).

Defendant Kearney, at some point, did initiate an investigation into the

alleged police misconduct related to Plaintiff's arrest and published the results of

said investigation on September 5, 2013, in a 24-page press release.  (*Id.* ¶ 49; Doc.

106-3, pp. 1-34).  Among other things, the report references and describes

interviews with Plaintiff, some of Plaintiff's relatives and relations, and the

arresting and responding officers; the police cruiser video footage; Plaintiff's

medical records; the police officers' training records; and the Springettsbury

Township Police Department case file.  (Doc. 106-3).  The report includes

Defendant Kearney's legal analysis, concluding that the amount of forced used by

the arresting officers was reasonable under the circumstances.  (*Id.* at pp. 22-24).  It

also appends the expert opinion of Sargent Charles Mory of the Pennsylvania State

Police Academy, who reviewed the video footage and opined that the actions of

Officers Moyer and Hadfield were consistent with accepted law enforcement

practices and training.  (*Id.* at pp. 33-34).  In terms of personal and medical

information, the report relates Plaintiff's statements that she is bipolar and that, on

the night of her arrest, she was having an "episode" and attempted to hurt herself

by ingesting pills and procuring a knife.  (*Id.* at p. 3).  Plaintiff's boyfriend

described her as very depressed and suicidal.  (*Id.* at p. 4).  Interviews also suggest

that Plaintiff may have been attempting to cheat on her boyfriend on the night in

question.  (*Id.* at p. 6).  The report indicates that Plaintiff was taking multiple

medications for depression, bipolar disorder, and anxiety, and that she had a

history of hospital admissions for mental treatment.  (*Id.* at p. 12).

Additionally, Plaintiff maintains that the dissemination of the press release

violated Defendant Kearney's own policy of not publicizing criminal

investigations unless and until charges are filed.  Plaintiff cites an email sent by

Defendant Kearney on June 23, 2011, for evidence of the policy.[2]  The email

appears purposed to explain the procedure employed by police departments and the

district attorney when a complaint is filed against an officer.  (Doc. 106-2).

Defendant Kearney outlined that the first step is for a police department to conduct

an internal investigation to determine whether a departmental policy has been

violated, and he notes that such inquiries are for departmental improvement and are

not shared publicly.  (*Id.*).  If the investigation reveals that a criminal law may have

been violated, the matter is referred to an outside police agency for a separate

inquiry.  (*Id.*).  Defendant Kearney stated that he then reviews the results of the

criminal investigation to decide whether charges should be filed.  (*Id.*).  The

statement Plaintiff highlights as indicative of Defendant Kearney's policy against

publicizing criminal investigations is as follows:  "I certainly do not share a

criminal investigation publicly unless and until charges are filed and then only

through the discovery process."  (*Id.*).  The message then remarks that a Chief

Seibel is "aware [of] your concerns" and notes that Defendant Kearney has "full

confidence in him."  (*Id.*).

Based on the remark in the aforementioned email, Plaintiff believes that no

---

[2]  The recipient/s and subject of the email have been redacted and are not known to the
Court.

information regarding the police misconduct inquiry should ever have been disclosed because the investigation report concluded that criminal charges were not appropriate,. (Doc. 106, ¶ 51). She maintains that the press release was circulated for the purpose of retaliating against Plaintiff for embarrassing Defendant Kearney when she filed her civil rights suit. (*Id.* ¶ 48).

## II.   PROCEDURAL HISTORY

Plaintiff commenced the instant civil action with the filing of a Complaint on March 14, 2013 (Doc. 1), and, soon after, submitted an Amended Complaint. (Doc. 3). The action was lodged against certain employees of the Springettsbury Township Police Department, the Department, the Township, and York County, Pennsylvania. She alleged, among other things, excessive use of force, malicious prosecution, supervisory liability, and, pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) and its progeny, municipal liability. Various of the parties filed motions to dismiss, including York County. In our Memorandum of August 6, 2013 addressing those motions, we held, among other things, that Plaintiff had failed to state a claim against York County for municipal liability. (Doc. 45). We explained that municipalities may be held liable for a plaintiff's constitutional injury only where "the municipality itself, by implementing a municipal policy, regulation or decision either formally adopted or

7

informally adopted through custom, actually caused the alleged constitutional violation." (*Id.* at p. 18 (quoting *Monell*, 436 U.S. at 691) (internal quotation marks omitted)).  We further described that a plaintiff must proffer sufficient facts whereby a jury could find that the municipality was the "moving force behind the injury alleged." (*Id.* at p. 21 (quoting *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted)).  We held that Plaintiff had failed to show that York County was the "moving force" behind her alleged harm.  Plaintiff had advanced only that the County had failed to investigate her injury *after* the incident, and did not establish that a county policy or custom existed at the time of her injury which proximately caused the same.  (*Id.* at p. 22).  Accordingly, we dismissed Plaintiff's relevant *Monell* claim, although we did so without prejudice, permitting Plaintiff 20 days to amend her pleading in the case she possessed evidence to cure the deficiency.  Plaintiff did not amend her pleading within the 20 day window, and, pursuant to our Order, dismissal of the *Monell* claim became prejudicial.  (*Id.* at p. 25).

Later, Plaintiff entered into a partial settlement agreement, pursuant to which all Springettsbury Township defendants were dismissed from this litigation.  (Doc. 73).  Subsequent to the settlement, we permitted Plaintiff to file a Second Amended Complaint, in which, among other things, she added District Attorney

Thomas L. Kearney III as a defendant to the action.  (Doc. 75).

In her Second Amended Complaint, Plaintiff relevantly advanced a

retaliation claim pursuant to the First Amendment to the United States Constitution

against Defendant Kearney and attempted to reassert a municipal liability claim

pursuant to the First, Fourth, and Fourteenth Amendments to the United States

Constitution against York County.  (Doc. 75, ¶¶ 98-140).  On April 11, 2014, the

County and Defendant Kearney filed a Motion to Dismiss.  (Doc. 84).  We issued a

Memorandum and Order on October 6, 2014, granting the motion.  (Doc. 97).  As

to the retaliation claim, we noted that Defendants did not dispute that filing a

lawsuit is a protected activity or that a person of ordinary firmness would be

deterred from exercising her constitutional rights by the subsequent disclosure of

the press release.   However, we found insufficient evidence of a causal nexus,

indicating that Plaintiff's initiation of the instant action caused Defendant Kearney

to publish the press release containing the protested personal information.  We

observed that the press release was not temporally proximate to the filing of

Plaintiff's Complaint and that there had been no intervening antagonistic acts on

the part of Defendant Kearney.  (*Id.* at pp. 10-12).  Surveying the record as a

whole, we simply could not find evidence from which to infer a retaliatory motive.

(*Id.* at pp. 12-13).  We dismissed the claim without prejudice, however, in the case

that Plaintiff could amend her pleading to cure the deficiency in her retaliation

allegation.  We dismissed the *Monell* claim against York County with prejudice.

(Doc. 97, p. 14).

Thereafter, Plaintiff filed a Third Amended Complaint and, with the

concurrence of Defendants, a Fourth Amended Complaint (Doc. 106), the now-

operative pleading.  Appended to the pleading are the documents previously

referenced: the email from Defendant Kearney describing police misconduct

investigations (Doc. 106-2) and the September 5, 2013, press release (Doc. 106-3).

Plaintiff reasserts her retaliation claim against Defendant Kearney and a *Monell*

claim against York County based on failure to train its officials with respect to the

First Amendment.[3]

Defendants filed the pending Motion to Dismiss on November 13, 2014

(Doc. 101), which has been briefed and is ripe for disposition.

## III.   LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) contends that the complaint

---

[3]  In advancing her *Monell* claim, Plaintiff acknowledges that we dismissed her previous municipal liability claim against York County with prejudice.  (Doc. 97).  She points out that the dismissed claim was multi-faceted, involving allegations related to failure to train pursuant to the Fourth Amendment and, also, failure to train related to the First Amendment.  We agree with Plaintiff that she should be permitted to reassert a *Monell* claim predicated on the First Amendment, given that we have allowed her to amend  her pleading to attempt to cure the deficiency in her related retaliation claim.

has failed to assert a claim upon which relief can be granted.  *See* FED. R. CIV. P.

12(b)(6).  In considering such motion, courts "accept all factual allegations as true,

construe the complaint in the light most favorable to the plaintiff, and determine

whether, under any reasonable reading of the complaint, the plaintiff may be

entitled to relief."  *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)

(quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

To resolve the motion, a court generally should consider only the allegations in the

complaint, as well as "any matters incorporated by reference or integral to the

claim, items subject to judicial notice, matters of public record, orders, [and] items

appearing in the record of the case."  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d

256, 260 (3d Cir. 2006) (citation and internal quotation marks omitted).

   In general, a Rule 12(b)(6) motion tests the sufficiency of the complaint

against the pleading requirements of Rule 8(a).  Rule 8(a)(2) requires that a

complaint contain a short and plain statement of the claim showing that the pleader

is entitled to relief, "in order to 'give the defendant fair notice of what the claim is

and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (alteration

omitted)).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss need

not contain detailed factual allegations, it must contain "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*
*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  To survive a
motion to dismiss, "a civil plaintiff must allege facts that 'raise a right to relief
above the speculative level . . ..'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d
Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Accordingly, to satisfy the
plausibility standard, the complaint must indicate that the defendant's liability is
more than "a sheer possibility."  *Iqbal*, 556 U.S. at 678.  "Where a complaint
pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short
of the line between possibility and plausibility of entitlement to relief.'" *Id.*
(quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later
formalized in *Iqbal*, a district court must first identify all factual allegations that
constitute nothing more than "legal conclusions" or "naked assertion[s]."
*Twombly*, 550 U.S. at 564, 557.  Such allegations are "not entitled to the
assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6)
motion to dismiss.  *Iqbal*, 556 U.S. at 679.  Next, the district court must identify
"the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual
allegation[s]."  *Id.* at 680.  Taking these allegations as true, the district judge must
then determine whether the complaint states a plausible claim for relief.  *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.* at 234 (quoting *Twombly*, 550 U.S. at 556).

## IV.   DISCUSSION

To plead a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must show that: (1) she engaged in constitutionally protected activity; (2) the defendant responded with retaliatory conduct sufficient to deter a person of ordinary firmness from exercising her constitutional rights; and (3) there was a causal connection between the protected conduct and the retaliatory act. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). As to the third prong, temporal proximity between the protected conduct and the purported retaliation may be probative of causation. *See Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003). However, the timing must be "unduly suggestive" of retaliatory motive to, by itself, support causality. *See id.*; *Lauren W.*, 430 F.3d at 267 (causation may be based on "an unusually suggestive

temporal proximity"); *see also Fischer v. Transue*, No. 04-cv-2756, 2008 WL 3981521, at *10 (M.D. Pa. Aug. 22, 2008) (observing that temporal proximity must be determined on the unique facts of each case, but that the case law suggests that "the difference in time must be measured in days, rather than in weeks or months, to establish causation on its own").  Where timing alone does not indicate a causal relationship, "courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the [plaintiff], . . . or other types of circumstantial evidence . . . that give rise to an inference of causation when considered as a whole."  *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (citations omitted); *see Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997) ("When temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.").  We review the record in its entirety for circumstantial evidence of causation.  *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000).

In pleading her retaliation claim, Plaintiff advances that her filing of a federal civil rights lawsuit constituted protected activity; Defendant Kearney's response in publishing the press release, which included embarrassing personal

14

information about her, would have restrained a person of typical resolve from

taking such action; and Defendant Kearney's conduct was directly linked to her

exercise of her rights.  Plaintiff acknowledges that causation cannot be established

via temporal proximity alone or a pattern of antagonism, however, she maintains

that the record as a whole shows the requisite causal nexus.  In support, she

highlights that "Defendant Kearney's lengthy press release deviated from his stated

policy and practice, occurred during the only opportunity that he had to retaliate

against Ms. Williams, [and] failed to contain any discussion of the Township's

policies or training, but publicly disclosed a significant amount of familial and

private medical information about Ms. Williams that was in no way related to the

relevant legal inquiry."  (Doc. 106, ¶ 65).  Plaintiff notes that, when we previously

dismissed her retaliation claim, we did not have the benefit of the press release or

Defendant Kearney's publication policy.  Both are now part of the record, and

Plaintiff believes that this additional evidence "changes the outcome of the

equation."  (Doc. 107, p. 5).

As in their previous motion to dismiss, Defendants again focus on the

causation prong of Plaintiff's retaliation claim.  They highlight that there was a five

and a half month gap between the filing of the Complaint and the allegedly

retaliatory act and that there are no allegations of interaction between Plaintiff and

Defendant Kearney in the interim.  Defendants aver that "[a]ny fair reading of the press release would reveal that the sole purpose of the release was for the District Attorney to be transparent about the reasons behind his decision not to file criminal charges against the police officers.  The release is very detailed and is clearly designed to advise the public of all of the factors considered by the District Attorney in making the decision not to charge the police officers."  (Doc. 102, p. 5).

Here, as Plaintiff concedes, a causal nexus between Plaintiff's civil suit and Defendant Kearney's allegedly retaliatory press release is not revealed by timing alone.  *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation[.]").  Neither is causation shown by a pattern of antagonism coupled with timing, as the only hostile act alleged by Plaintiff is the publication of the press release itself.

Accordingly, we will appropriately accept Plaintiff's invitation to look to the record in its entirety to determine whether Plaintiff has alleged enough facts "to raise the inference that her protected activity was the likely reason for the adverse

16

action." *Kachmar*, 109 F.3d at 177 (citation and internal quotation marks omitted). Again, we are constrained to conclude that Plaintiff has not made a sufficient showing.

First and foremost, Plaintiff alleges no actions on the part of Defendant Kearney during the period between the filing of her pleading and the press release that would suggest retaliatory motive. The Third Circuit has logically directed our focus to this critical period in looking for evidence that exercise of a protected right *caused* a retaliatory act, and, here, there is a perfect void. *See Marra*, 497 F.3d at 302 (instructing that courts may examine the intervening period between the protected conduct and the defendant's protested act for evidence of retaliatory animus); *Krouse*, 126 F.3d at 503-04 (same). Plaintiff's explanation that Defendant Kearney had limited opportunity to act upon his retaliatory hostility against her (but for the press release) rings hollow. To credit her argument would completely undercut the showing she is obliged to make to state a legal claim.

Plaintiff's efforts to demonstrate causation based on the alleged retaliatory act itself – the issuing of the press release  – are similarly unavailing. To the extent Plaintiff believes an inference of retaliatory animus may be drawn from an inconsistency with Defendant Kearney's publication "policy," we cannot ignore the fact that it is Plaintiff herself who has framed the supposed policy as such.

17

Plaintiff has derived her theory from an email generally describing and assuring

that active police misconduct investigations are kept confidential until charges are

filed.  We do not glean from this missive a concomitant commitment to

confidentiality where police officers are ultimately cleared of criminal liability.

Further, inasmuch as Plaintiff alleges that the overall content of the press release

suggests causation, a reading of the investigation report reveals a thorough account

of the facts and applicable law related to Plaintiff's April 2, 2011 arrest.  The

protested details are often directly derived from witness interviews with much of

the information coming from Plaintiff herself, are not gratuitous or ill-suited, and

logically help explain Plaintiff's conduct on the night of the arrest.  Although the

report released by Defendant Kearney certainly could have been more discreet in

discussing Plaintiff's mental health and other personal information, we simply

cannot infer from the evidence before us that such details were included based on

Plaintiff's filing of a civil lawsuit.[4]

     In sum, reviewing the record as a whole and viewing all of the facts in the

---

[4]  We pause to note that Plaintiff had previously asserted a HIPAA violation, which necessarily failed because there is no private right of action pursuant to HIPAA.  (Doc. 97, pp. 14-15 (citing *Dade v. Gaudenzia DRC, Inc.*, No. 13-1381, 2013 WL 3380592, at *2 (E.D. Pa. July 8, 2013); *Rigaud v. Garofalo*, No. 04-1866, 2005 WL 1030196 at *3 (E.D. Pa. May 2, 2005) (collecting cases))).  Furthermore, we cannot help but observe that, inasmuch as Plaintiff has marshaled evidence of her mental and emotional health to buttress her underlying excessive force claims, she cannot credibly argue that her case must be sterilized of the same when it benefits her position.

light most favorable to Plaintiff, we find that Plaintiff has failed to state a claim for First Amendment retaliation that is plausible on its face.  Accordingly, we will grant Defendant Kearney's motion to dismiss Plaintiff's relevant claim.

Having found that Plaintiff has not stated a claim for retaliation, her related *Monell* claim must fail because there is no constitutional deprivation upon which to base Section 1983 liability.  *See* 42 U.S.C. § 1983; *cf. Piecknick v. Pa.*, 36 F.3d 1250, 1255-56 (3d Cir. 1994) ("To establish a section 1983 civil rights claim, a plaintiff 'must demonstrate that the conduct complained of was committed by a person acting under state law and that the conduct deprived him of rights, privileges or immunities secured by the Constitution.'" (quoting *Carter v. City of Phila.*, 989 F.2d 117, 119 (3d Cir.1993))).

## V.    CONCLUSION

For all of the reasons articulated herein, we shall grant Defendants' Motion to Dismiss in its entirety, dismiss Plaintiff's Fourth Amended Complaint, and direct the Clerk of Court to close the file on this matter.

An appropriate Order shall issue.